UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD S. CLOUTHIER,

                                  Plaintiff,

                                                                             <u>DECISION AND ORDER</u>

                                                                             08-CV-6441L

                          v.

LAWRENCE M. BECKER,
in his capacity as Xerox Corporation Retirement
Income Guarantee Plan Administrator and as an
individual,
XEROX CORPORATION RETIREMENT
INCOME GUARANTEE PLAN,
XEROX CORPORATION,
HEWITT ASSOCIATES,

                                  Defendants.
_____

       Plaintiff Richard Clouthier brings this action against the Xerox Corporation ("Xerox"), the Xerox Corporation Retirement Income Guarantee Plan ("RIGP" or "Plan")), Lawrence Becker (in his capacity as the administrator of the RIGP), and Hewitt Associates, alleging that plaintiff's pension benefits have been reduced in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101 *et seq*.

       Defendants have moved for summary judgment (Dkt. #29). For the following reasons, the motion is granted.

**INTRODUCTION**

       This is one of several ERISA cases that have been brought in this Court, relating generally to the calculation and payment of retirement benefits for Plan participants who left Xerox's employ

at some point, took a lump-sum distribution of accrued pension benefits, and later returned to Xerox for a second period of employment. The basic dispute in all these cases involves defendants' treatment of the prior distributions when calculating plaintiffs' subsequent pension benefits, following plaintiffs' second period of employment.

In particular, plaintiffs have challenged Xerox's use of a so-called "phantom account," which involves reducing participants' benefits based on a hypothetical appreciation of the prior lump-sum distribution. The details of the phantom account have been set forth in several reported decisions, including *Frommert v. Conkright*, 433 F.3d 254, 257-61 (2d Cir. 2006).

On January 5, 2016, the Court issued a Decision and Order in *Frommert v. Conkright*, 00-CV-6311, which, as the Court there stated, "might fairly be described as the 'lead case,'" inasmuch as it has been the subject of several decisions of this Court, of the Court of Appeals, and of the United States Supreme Court. __ F.Supp.3d __, 2015 WL 64678, at *1. For purposes of this Decision and Order, familiarity with that *Frommert* decision, and with the other relevant decisions in all these cases, is assumed. *See*, *inter alia*, *Conkright v. Frommert*, 559 U.S. 506 (2010); *Frommert v. Conkright*, 738 F.3d 522 (2d Cir. 2013).

As stated, defendants in the case at bar have moved for summary judgment. Their motion is based on two grounds: first, that plaintiff has released defendants from all the claims presented in this suit, and second, that his claim is time barred.

**BACKGROUND**

Plaintiff initially worked for Xerox from 1970 to 1979. When he first left Xerox's employment in 1979, plaintiff accepted a lump-sum distribution of about $7600, which represented the balance of his then-accrued retirement benefits.

After working elsewhere for a time, plaintiff returned to work for Xerox in 1992, and left Xerox for the second and final time in February 1999. At the time of his second separation from

Xerox in 1999, plaintiff executed a "General Release," which provided that, in consideration of Xerox's agreement to provide him with salary continuance, plaintiff agreed to release Xerox "from any and all claims of any kind, known or unknown, which I now have or may have against [Xerox] by reason of facts which have occurred prior to the date of this Release." Dkt. #29-10 at 2.

At his deposition, plaintiff, who was born in April 1942, *see* Dkt. #29-12 at 8, testified that "just short" of his sixty-fifth birthday, *i.e.*, shortly before April 27, 2007, he applied for Social Security benefits. *Id.* In response to that application, the Social Security Administration ("SSA") sent plaintiff a letter stating that "you ... MAY be entitled to some private pension benefits upon retirement." The letter listed an estimated monthly benefit of $1421 from the RIGP. Dkt. #29-8 at 4.

The letter made clear, however, that SSA made no representations about whether plaintiff actually was entitled to those benefits. Again, the letter simply informed plaintiff that if he "may" have been entitled to such benefits, adding that if plaintiff had any questions in that regard, he should contact the Xerox plan administrator. *Id.* Plaintiff has testified that this letter from SSA was "what triggered this" lawsuit. Dkt. #29-12 at 8.

After receiving that letter, plaintiff contacted his attorney. Some correspondence with Xerox followed, but ultimately Xerox determined, and informed plaintiff, that he was not entitled to any additional pension benefits, owing to the appreciated offset attributable to his prior lump-sum distribution. *See* Dkt. #29-3 at 3, ¶ 10; Dkt. #30-1 at 3. Plaintiff alleges that in a telephone conversation in May 2008, defendants' attorney "officially confirmed Xerox's position" that plaintiff was not entitled to additional benefits. Dkt. #30-1 at 3; Dkt. #30-4 at 2. Plaintiff commenced this lawsuit in September 2008. The complaint asserts claims under 29 U.S.C. § 1132(a)(1)(B) and 1132(a)(3), seeking a judgment requiring defendants to pay plaintiff additional benefits, essentially without applying any phantom account offset.

**DISCUSSION**

**I. Plaintiff's Release**

The first ground for defendants' motion for summary judgment is that plaintiff validly released defendants from liability for the claims presented here. I agree.

The Court of Appeals for the Second Circuit has made it clear that releases of the type at issue here are valid and enforceable in ERISA cases. The court has done so in more than one of the Xerox cases arising out of the same general facts of this action relating to the phantom account. *See Anderson v. Xerox Corp.*, 614 Fed.Appx. 38, 39 (2d Cir. 2015) (upholding validity of release virtually identical to that at issue here) (citing *Frommert v. Conkright*, 535 F.3d 111, 12023 (2d Cir. 2008), *rev'd and remanded on other grounds*, 559 U.S. 506 (2010)).

Plaintiff has argued in this case that his release does not bar his claims, because at the time he signed the release, plaintiff was unaware that Xerox would later determine that he was not entitled to pension benefits, based on the phantom account method. In other words, plaintiff contends that because there was no existing controversy or dispute between defendants and him at the time he executed the release, the release is ineffective as to his claims here.

The Court of Appeals rejected a similar argument by the plaintiff in *Anderson*. The plaintiff there attempted to distinguish *Frommert* on the ground that the release in *Frommert* was executed after litigation had begun, which showed that the employees in *Frommert* unquestionably knew about the phantom account offset. The Second Circuit was unpersuaded by that argument, stating that "the booklet [presumably the plan summary] given to Anderson prior to the release gave him sufficient notice that the same type of deduction would be made in calculating his benefit." 619 Fed.Appx. at 39.

The same reasoning applies here. By the time plaintiff executed the release in 1999, Xerox had distributed to employees the 1998 summary plan description ("SPD"). The Second Circuit has held that the 1998 SPD effectively "amended the text of the Plan to include the phantom account and

- 4 -

comparative methodology by *fully setting out* how they are used to calculate rehired employees' benefits." *Frommert*, 433 F.3d at 268-69 (emphasis added).

The Court of Appeals made that statement in the context of its conclusion that the phantom account could validly be applied to employees hired after the issuance of the 1998 SPD. Plaintiff in the case at bar was rehired in 1992. The salient point, however, is that plaintiff *signed the release* in 1999, "[w]ith full notice of the phantom account's existence." *Id.* at 269. As *Anderson* makes clear, that bars his claim here.

Plaintiff's argument that at the time he executed the release, he was unaware of the existence of the claim he now advances, is thus unavailing. By its terms, the release applied to *all* claims, "known or unknown, which I now have or may have ... ."[1] I conclude, therefore, that the release signed by plaintiff in 1999 was both knowing and voluntary, and that it bars his present claims.

## II. Statute of Limitations

While the Court's finding that plaintiff's claims are barred by his release renders it unnecessary to reach the limitations issue, I also find that plaintiff's claims are time-barred.

In general, federal courts in New York apply New York's six-year statute of limitations to ERISA benefits claims. *See Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983); *Ivanovic v. IBM Personal Pension Plan*, 47 F.Supp.3d 163, 167 (E.D.N.Y. 2014). Parties may, however, validly contract for a shorter limitations period. *See*, *e.g.*, *Buffalo Anesthesia Associates, P.C. v. Gang*, No. 05-CV-0204, 2009 WL 1449047, at *4 (W.D.N.Y. May 20, 2009).

---

[1] By its terms, the release applies to claims arising "by reason of facts which have occurred prior to the date of this Release." That does not mean, however, that plaintiff can avoid the release simply because he waited some nine years to seek additional pension benefits. As explained in Part II, *infra*, plaintiff's claim arose not in 2008, when Xerox informed his attorney that plaintiff was not entitled to additional benefits, but ten years earlier, when plaintiff was put on notice of the existence and operation of the phantom account offset.

In the case at bar, the 1998 SPD provides that "any action in state or federal court for the alleged wrongful denial of plan benefits" must be brought "within one year after the cause of action accrued," which, according to the SPD, "is generally from the time one first knew or should have known of the alleged wrongful denial .... ." Dkt #29-4 at 77.

In support of their motion for summary judgment, defendants make several arguments, apparently in the alternative. First, they contend that this one-year contractual limitations period is controlling, and that at the very latest, plaintiff's claim arose in May 2007, when he called the Xerox benefits center and was informed that he was not entitled to additional benefits. As stated, plaintiff filed his complaint in this action in September 2008.

Second, defendants argue that even if the standard six-year limitations period applies, plaintiff's claim is time-barred, because plaintiff was put on notice of the existence and operation of the phantom account by the 1998 SPD.

In response, plaintiff asserts that it was not until May 2008 that Xerox, through its attorney, definitively stated that he was not entitled to additional benefits. Plaintiff contends that even applying a one-year limitations period, this action is timely.

This Court has addressed similar issues in the past, in cases relating to Xerox pension benefits. For the reasons stated in the Courts' decisions in those cases, I conclude that, even if the Court were to apply a six-year limitations period, plaintiff's claims here are time-barred, because the limitations period in this case began to run when plaintiff was first apprised of the phantom account offset, by means of the 1998 SPD.

The limitations period applicable to a claim for benefits under ERISA begins to run "upon a clear repudiation [of the plaintiff's claim of entitlement to benefits] by the plan that is known, or should be known, to the plaintiff." *Carey v. International Broth. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 49 (2d Cir. 1999). "[A]ccrual is triggered by either actual knowledge or constructive knowledge of a clear repudiation." *Id.* at 48 n.4.

As stated above, the 1998 SPD spelled out how the phantom account operated. The fact that plaintiff had not filed a claim for benefits when the SPD was issued (for that matter, he did not seek any additional benefits until he applied for Social Security benefits, many years later) is of no moment. The Second Circuit has expressly held that the limitations period begins to run upon a clear repudiation, "regardless of whether the plaintiff has filed a formal application for benefits." *See id.* at 49. Plaintiff therefore had until 2004, at the latest, to file his claims here. Since he instead waited until 2008 to commence this lawsuit, his claims are untimely.

As stated, this result is consistent with the holdings of this Court in prior cases, involving the same plan, under similar circumstances. *See, e.g., Testa v. Becker*, 979 F.Supp.2d 379, 383 (W.D.N.Y. 2013) ("Even if the Court were to apply a six-year limitations period, plaintiffs' time within which to file suit asserting a claim for benefits under § 1132(a)(1)(B) expired in 2004, some six years before plaintiff started this lawsuit") (internal quote omitted); *accord Holland v. Becker*, No. 08-CV-6171, 2013 WL 5786590, at *4 (W.D.N.Y. Oct. 28, 2013) (noting that plaintiffs could not "unilaterally extend their limitations period by filing administrative claims years after they were put on notice of the operation of the phantom account," and stating that "[i]f plaintiffs objected to [the phantom account] offset, their time to challenge it began to run" when they received the 1998 SPD).

There is also no evidence that would support a finding that anything that defendants did or failed to do after the issuance of the 1998 SPD would have misled plaintiff, or, if he was confused about his entitlement to benefits, that defendants were to blame. In other words, any argument by plaintiff that defendants' later actions somehow tolled, restarted, or resurrected the limitations period fails.

Plaintiff states that as recently as May 2007, he received a statement from Xerox indicating that he had over $39,000 in his Cash Balance Retirement Account. *See* Dkt. #30-4 at 5. But those statements did not state or imply that this meant that plaintiff was entitled to pension benefits. That

same statement expressly said that plaintiff's "actual RIGP benefit [would] be determined based on" the application of the terms of the Plan, "which is not reflected here." *Id.*

As noted above, those terms had been made clear by the 1998 SPD. If plaintiff was uncertain about how the phantom account would affect his entitlement to benefits, he could have sought clarification in 1998, when he received the SPD, or in 1999, when he left Xerox. Nothing required him to wait until he turned 65 before seeking such clarification.

Aside from that, plaintiff testified that it was not those statements from Xerox, but the SSA's 2007 letter in response to his claim for Social Security benefits that actually precipitated this lawsuit. The SSA's statements cannot be attributed in any way to Xerox. Furthermore, the SSA emphasized that plaintiff "MAY" have been entitled to private pension benefits from Xerox, and that he should contact the Xerox plan administrator for further information. The ultimate response by the plan administrator was simply to state that, in accordance with the terms of the Plan (which had been fully explained in the 1998 SPD), plaintiff was not entitled to pension benefits under the Plan. That did not somehow give rise to a new cause of action, or start an entirely new limitations period.

I also note that while the complaint cites 29 U.S.C. § 1132(a)(1)(B) as its jurisdictional basis, *see* Complaint ¶ 1, at the end of the complaint plaintiff alleges that he is entitled to relief under that section "and/or" § 1132(a)(3), which generally provides for equitable relief to redress violations of ERISA or of a pension plan. Complaint ¶ 45. Plaintiff has not alleged any facts in support of a claim under § 1132(a)(3),

At any rate, as explained earlier, by that time plaintiff had long since released Xerox from any and all claims, including those presented here. Defendants are therefore entitled to summary judgment.

**CONCLUSION**

Defendants' motion for summary judgment (Dkt. #29) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 21, 2016.